228 P.3d 365

**Maria STYKE, Petitioner–Appellant,**

v.

**Bruce Anthony SOTELO, Jr., Respondent–Appellee.**

**No. 28562.**

Intermediate Court of Appeals of Hawai'i.

March 31, 2010.

As Corrected April 22, 2010.

Anne K. Leete (Legal Aid Society of Hawaii), On the briefs, for Petitioner–Appellant.

William A. Sloper (Law Office of William A. Sloper), Wailuku, On the briefs, for Respondent–Appellee.

NAKAMURA, C.J., FUJISE, and LEONARD, JJ.

Opinion of the Court by NAKAMURA, C.J.

Petitioner–Appellant Maria Styke (Styke) appeals from the "Order Dissolving Temporary Restraining Order for Protection" (Dissolution Order) that was entered by the Family Court of the Second Circuit (family court)[1] on May 3, 2007. The Dissolution Order dissolved a ninety-day temporary restraining order for protection (TRO) that was entered against Respondent–Appellee Bruce Anthony Sotelo, Jr. (Sotelo) on April 2, 2007. The sole issue presented in this appeal is whether the family court erred in ruling that Hawaii Revised Statutes (HRS) § 586–5(b) (2006) required the dissolution of the TRO because a show-cause hearing was not held within fifteen days of the issuance of the TRO. We conclude that the family court erred in dissolving the TRO and accordingly, we vacate the Dissolution Order.[2]

---

1. The Honorable Keith E. Tanaka presided.

2. Since the TRO has already expired, this appeal is arguably moot. However, an exception to the mootness doctrine applies to this case since the

question on appeal "affect[s] the public interest" and is "capable of repetition yet evading review," and "an authoritative determination [of the requirements of HRS § 586–5(b)] for the future guidance of public officers" is desirable. *Okada*

## BACKGROUND

Styke and Sotelo lived together and were involved in a romantic, intimate relationship. On April 1, 2007, a physical altercation ensued between Styke, who was pregnant, and Sotelo (April 1, 2007, incident), which resulted in Sotelo being arrested and charged in a separate criminal case. Thereafter, according to the record on appeal, Sotelo remained in custody throughout all family court proceedings relevant to this appeal.

### I.

On April 2, 2007, Styke filed an ex parte petition for a TRO pursuant to HRS Chapter 586 (Petition), claiming that Sotelo had committed "acts of domestic abuse or threats of domestic abuse against [Styke]" beginning on or about December 2, 2006, with the most recent acts occurring on April 1, 2007. The Petition alleged that during the April 1, 2007, incident, Sotelo: punched Styke in the face several times; pulled her hair; yanked her head from side to side; put a pillow over her face, stopping her from breathing; choked her; banged her head "against the tile"; put his knees against her stomach while he was on top of her; yanked on her head; and shoved her head into a pile of sheets on the floor.

On April 2, 2007, the family court granted the Petition and issued a ninety-day TRO against Sotelo, which was served on Sotelo the same day. The TRO, among other things, restrained Sotelo from threatening or physically abusing Styke, contacting Styke, or remaining within 100 yards of Styke's place of residence. The TRO had a stated expiration date of July 3, 2007, and ordered Sotelo to appear at a hearing to show cause why the TRO should not continue to be in effect (show-cause hearing) on April 12, 2007, at 8:00 a.m. However, due to rather unusual circumstances, the family court continued the show-cause hearing three times.

*Trucking Co. v. Bd. of Water Supply*, 99 Hawai'i 191, 196–97, 53 P.3d 799, 804–05 (2002) (internal quotation marks omitted).

### A.

At the request of Styke's attorney and with no objection from Sotelo, the family court, the Honorable Richard T. Bissen, Jr. (Judge Bissen) presiding, continued the April 12, 2007, hearing until April 19, 2007, because Styke was in the hospital.

### B.

At the April 19, 2007, hearing, Judge Bissen recused himself after recognizing Styke as an individual who had "subletted a rental unit of this Court's." Judge Bissen related that he "did not have a positive view of [Styke]."

Sotelo then orally moved to dismiss the TRO, on the ground that the show-cause hearing was not held within fifteen days of the granting of the TRO, which Sotelo argued was required by HRS § 586–5 (2006). The parties agreed that Judge Bissen could rule on the motion. Judge Bissen denied the motion, noting that: he "couldn't hold [the April 12, 2007,] hearing without both parties because [HRS § ]586–35[sic][3] ... requires that both parties be present"; Sotelo had not objected to the continuance of the hearing from April 12, 2007, to April 19, 2007; and if Styke had appeared at the April 12, 2007 hearing, Judge Bissen would have recognized her and recused himself. Judge Bissen further explained that if Styke had appeared and Judge Bissen had recused himself at the April 12, 2007, hearing, Judge Bissen would have continued the hearing to April 26, 2007, which was "[t]he next available date" when the Honorable Geronimo Valdriz, Jr., (Judge Valdriz) "will be sitting in this courtroom instead of this Court." Judge Bissen then continued the show-cause hearing to April 26, 2007, before Judge Valdriz.

### C.

At the commencement of the April 26, 2007 hearing, Sotelo renewed his motion to dismiss the TRO. Judge Valdriz denied the motion, finding that "the hearing that the Court set this hearing for and for which

**3.** Judge Bissen was apparently referring to HRS § 586–5.

[Sotelo] did appear was satisfactory enough for purposes of holding a hearing even though that was continued. So I'm not finding that they violated the 15–day rule."

The evidentiary hearing on the order to show cause then ensued. As Styke's direct examination began, however, Judge Valdriz recalled that he had presided over the preliminary hearing for Sotelo's criminal case, which was based on the same allegations of domestic abuse that supported the April 2, 2007, TRO. With respect to the preliminary hearing, Judge Valdriz stated the he had found there "was a true bill ... to indict [Sotelo]." At Sotelo's request, Judge Valdriz recused himself and continued the hearing to May 3, 2007, before the Honorable Keith E. Tanaka (Judge Tanaka).

## II.

At the May 3, 2007, hearing, Sotelo once again sought to dismiss the TRO. Relying on *Ling v. Yokoyama*, 91 Hawai'i 131, 980 P.2d 1005 (App.1999), Judge Tanaka orally granted the motion and ruled that "today is May 3rd and that's way beyond the 15 day period from April 2nd." Judge Tanaka found that Styke's hospitalization at the time of April 12, 2007, hearing constituted exceptional circumstances justifying a continuance. However, Judge Tanaka ruled that the recusals of Judge Bissen and Judge Valdriz did not constitute exceptional circumstances that justified the continuances of the later hearings. Judge Tanaka noted that Sotelo was still subject to conditions of bail in his criminal case, which Judge Tanaka believed prohibited Sotelo from contacting Styke.

On May 3, 2007, Judge Tanaka issued the Dissolution Order which dissolved and vacated the TRO for "lack of prosecution[.]" This timely appeal followed, and on June 22, 2007, the family court[4] entered "Findings of Fact and Conclusions of Law," which concluded in relevant part:

### CONCLUSIONS OF LAW

1. That pursuant to [HRS § ]586–5(b), "on the earliest date that the business of the Court will permit, but no later than fifteen days from the date that the [TRO] is granted, the Court, after giving due notice to all parties, shall hold a hearing on the application requiring cause to be shown why the order should not continue....";

2. That "shall hold a hearing" mandates that the hearing be held within fifteen days. *Mi Suk Ling v. Haa Chun Yokoyama*, 91 Hawai'i 131[, 980 P.2d 1005] (1999);

3. That the term "held" mandates that the hearing shall be on the merits of the action. *Mi Suk Ling v. Haa Chun Yokoyama*, 91 Hawai'i 131[, 980 P.2d 1005] (1999).

4. That in this case more than fifteen days had elapsed since the granting of the [TRO], and as such the Court grants the Motion to Dismiss.

(Ellipsis points in original.)

## DISCUSSION

On appeal, Styke argues that the family court erred in concluding that (1) as a matter of law, HRS § 586–5 and *Ling* establish a strict mandate, regardless of the circumstances, that a hearing must be held within 15 days of the granting of a TRO, and (2) as a matter of fact, "the disqualifications of two family court judges did not constitute exceptional circumstances that warranted continuances."

In response, Sotelo argues that the family court correctly dissolved the TRO based on the plain language of HRS § 586–5. Sotelo notes that a TRO limits a "respondent's freedom to move freely and communicate with members of the community[.]" Sotelo states that "[w]hen a [TRO] is dismissed because an order to show cause hearing on it did not occur within the fifteen day mandate of HRS [§ ]586–5(b), the petitioner has another remedy, to immediately file another [TRO] to be heard within the required timeframe."

For the reasons that follow, we hold that HRS § 586–5(b) did not compel dissolution of the TRO against Sotelo.

4. Judge Tanaka entered the findings of fact and conclusions of law.

## I.

HRS § 586–5 provides, in relevant part, as follows:

> **Period of order; hearing.** (a) A temporary restraining order granted pursuant to this chapter shall remain in effect at the discretion of the court, for a period not to exceed ninety days from the date the order is granted.
>
> (b) On the earliest date that the business of the court will permit, but *no later than fifteen days from the date the temporary restraining order is granted,* the court, after giving due notice to all parties, *shall hold a hearing on the application requiring cause to be shown why the order should not continue.* In the event that service has not been effected, the court may set a new date for the hearing; provided that the date shall not exceed ninety days from the date the temporary restraining order was granted. All parties shall be present at the hearing and may be represented by counsel.
>
> . . . .

(Emphases added.)[5] The foregoing language clearly provides that a hearing on an application for a TRO "shall" be held "no later than fifteen days from the date the [TRO] is granted[.]"

■ "It is a well-established that, where a statute contains the word 'shall,' the provision generally will be construed as mandatory." *Malahoff v. Saito,* 111 Hawai'i 168, 191, 140 P.3d 401, 424 (2006). In certain circumstances, however, the term "shall" may be construed as directory rather than mandatory with respect to the consequences of noncompliance. *Narmore v. Kawafuchi,* 112 Hawai'i 69, 83, 143 P.3d 1271, 1285 (2006).

In determining whether a statute is mandatory or directory the intention of the legislature must be ascertained. The legislative intent may be determined from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other. In general, a statute is directory rather than mandatory if the provisions of the statute do not relate to the essence of the thing to be done or where no substantial rights depend on compliance with the particular provisions and no injury can result from ignoring them.

*Jack Endo Elec., Inc. v. Lear Siegler, Inc.,* 59 Haw. 612, 617, 585 P.2d 1265, 1269 (1978) (quotation marks, ellipsis points, and citations omitted).

■ The Hawai'i Supreme Court has observed that "when a statute specifies what result will ensue if its terms are not complied with, the statute is deemed mandatory. Conversely, when a statute merely requires certain things to be done and nowhere prescribes the results that shall follow if such things are not done, the statute is merely directory." *Narmore,* 112 Hawai'i at 82, 143 P.3d at 1284 (quotation marks, brackets, and citations omitted). *See also Perry v. Planning Comm'n of Hawaii County,* 62 Haw. 666, 676, 619 P.2d 95, 103 (1980) ("Seemingly absolute time periods for administrative action . . . are often considered mere guides for the conduct of business with dispatch and for orderly procedure. They have generally been characterized as directory, unless time is of the essence of the act required, the statute contains negative language denying the exercise of authority beyond the period prescribed for action, or a disregard of the relevant provision would injuriously affect

---

5. HRS § 586–5.5 (2006) authorizes the court to convert a TRO into a longer-lasting protective order upon making certain findings. HRS § 586–5.5 provides in relevant part:

   (a) If, after hearing all relevant evidence, the court finds that the respondent has failed to show cause why the order should not be continued and that a protective order is necessary to prevent domestic abuse or a recurrence of abuse, the court may order that a protective order be issued for a further fixed reasonable period as the court deems appropriate.

   The protective order may include all orders stated in the temporary restraining order and may provide for further relief as the court deems necessary to prevent domestic abuse or a recurrence of abuse, including orders establishing temporary visitation and custody with regard to minor children of the parties and orders to either or both parties to participate in domestic violence intervention services. . . .

public interests or private rights." (citations omitted)).

> Stated differently, a statute specifying a time within which public officials are required to perform an act is directory unless the statute denies the exercise of power after such time, or the nature of the act or the statutory language indicates that the time was intended to be a limitation. In evaluating whether a provision is to be accorded directory or mandatory effect, the objective of the court is to ascertain the legislative intent.

*Malahoff,* 111 Hawai'i at 192, 140 P.3d at 425.

The Hawai'i Supreme Court has identified several circumstances in which the word "shall" can be construed as directory:

> First, "shall" can be read in a non-mandatory sense when a statute's purpose confutes the probability of a compulsory statutory design. Second, "shall" will not be read as mandatory when unjust consequences result. Third, the word "shall" may be held to be merely directory, when no advantage is lost, when no right is destroyed, when no benefit is sacrificed, either to the public or to the individual, by giving it that construction.

*Narmore,* 112 Hawai'i at 83, 143 P.3d at 1285 (certain internal quotation marks, brackets, and citations omitted).

## II.

■ While HRS § 586–5(b) plainly instructs that the family court "shall hold" a show-cause hearing within fifteen days of the granting of a TRO, the statute is silent with respect to the consequences of non-compliance. Notably, HRS § 586–5 does not provide that a TRO, which may be issued for a period of up to ninety days, must be dissolved if a show-cause hearing is not held within fifteen days of the granting of the TRO.[6]

Insofar as HRS § 586–5(b) "nowhere prescribes the results that shall follow [if a show-cause hearing is not held within fifteen days]," *Narmore,* 112 Hawai'i at 82, 143 P.3d

at 1284, and does not "den[y] the exercise of power after such time," *Malahoff,* 111 Hawai'i at 192, 140 P.3d at 425, we conclude that the statute's fifteen-day time period for holding a show-cause hearing is directory. *See Shaw v. Packard,* 886 A.2d 1287, 1290 (Me. 2005) ("If substantial reasons presented by either party support the granting of a continuance [beyond the twenty-one-day hearing requirement], the [protection-from-abuse] statute allows the court to maintain the status quo by [granting a continuance and] extending the effectiveness of the protection order."); *Jenkins v. Croft,* 63 S.W.3d 710, 713 (Mo.Ct.App.2002) (holding that court's failure to comply with statute's fifteen-day hearing requirement did not deprive the court of subject matter jurisdiction to decide petition for order of protection).

## III.

The legislative purposes for HRS § 586–5 and HRS Chapter 586 support the interpretation of HRS § 586–5(b)'s provision that the family court "shall hold" a show-cause hearing within fifteen days as directory. This court has previously observed that the statutes concerning domestic abuse protective orders (1) provide protection for an abused family or household member and streamline the procedures to obtain a TRO to prevent domestic abuse, (2) assure a period of separation between the parties, and (3) have been amended over the years to better protect domestic abuse victims:

> *HRS § 586–5 addresses the problem of domestic abuse by providing protection for an abused family or household member through the issuance of a restraining order. The legislature enacted HRS Chapter 586 in 1982 "to streamline the procedures for obtaining and issuing ex parte temporary restraining orders to prevent acts of or the recurrence of domestic abuse."* Hse. Conf. Comm. Rep. No. 1, in 1982 House Journal, at 815; *see also* Hse. Stand. Comm. Rep. No. 592, in 1982 House Journal, at 1165; Sen. Conf. Comm. Rep. No. 4, in 1982 Senate Journal, at 873. The

---

6. In addition, HRS § 586–5(b) itself allows the family court to ignore the fifteen-day provision and "set a new date for the hearing[,]" not to exceed ninety days from the granting of the TRO, "[i]n the event service has not been effected[.]"

Senate Standing Committee Report found that a restraining order serves "to cool violent relationships that have been developing for a number of years" and that giving the court "the discretion to extend protective orders" provides "greater flexibility in trying to calm the emotionally charged nature of such situations." Sen. Stand. Comm. Rep. No. 643, in 1982 Senate Journal, at 1222. Thus, *the purpose of the restraining order is to "prevent [ ] acts of abuse, or a recurrence of actual domestic abuse, and assur[e] a period of separation of the parties involved."* HRS § 586–4.

*Later amendments to Chapter 586 sought "to better protect the victims of domestic abuse."* Sen. Stand Comm. Rep. No. 1444, in 1987 Senate Journal, at 1521. The legislature recognized "that many victims of domestic abuse depend on protective orders to rescue them from violent attacks and threats of abuse." Hse. Stand. Comm. Rep. No. 549, in 1987 House Journal, at 1359. Consequently, in 1991, to "increase the effectiveness of protective orders," the legislature extended "the duration of protective orders in domestic abuse cases." Sen. Stand. Comm. Rep. No. 854, in 1991 Senate Journal, at 1059; *see also* Sen. Stand. Comm. Rep. No. 1015, in 1991 Senate Journal, at 1107. This expansion of the protective period was based on "[c]urrent information not[ing] that most women who had restraining orders issued by the courts continue to be harassed or threatened by their abusers for several years." Hse. Stand. Comm. Rep. No. 524, in 1991 House Journal, at 1031. Such information led the legislature to conclude that "the current six months allowed for protective orders [was] not sufficient to protect women from the danger they continually face from their abusers." *Id.*

*Coyle v. Compton,* 85 Hawai'i 197, 204–05, 940 P.2d 404, 411–12 (App.1997) (brackets in original; emphases added).

If this court were to adopt Sotelo's interpretation of HRS § 586–5(b), a ninety-day TRO, promptly served, that was issued on a finding of probable cause of past or imminent acts of abuse would automatically be dissolved fifteen days after being granted, despite the best efforts of the family court and the parties to convene a show-cause hearing. Indeed, under Sotelo's interpretation, the family court's failure to satisfy the fifteen-day provision would result in the petitioner's automatic loss of the protection of the TRO, even if the petitioner was not to blame for any delay in setting the show-cause hearing.

While a petitioner, the purported victim of domestic abuse, could request a second TRO, the purported victim would bear the burden of reapplying and the risk of loss of protection associated with the failure to convene a show-cause hearing within fifteen days, under Sotelo's interpretation of HRS § 586–5(b). Adopting Sotelo's interpretation would undermine the purpose of HRS Chapter 586, which is "to streamline the procedures for obtaining and issuing ex parte temporary restraining orders to prevent acts of or the recurrence of domestic abuse[,]" *Coyle,* 85 Hawai'i at 205, 940 P.2d at 412 (internal quotation marks omitted), and to "ensur[e] a period of separation of the parties involved." HRS § 586–4(c) (2006).

IV.

Although we conclude that the fifteen-day time period for holding a show-cause hearing in HRS § 586–5(b) is directory, that does not mean that a court is free to disregard the provision. The fifteen-day time period is "directory" insofar as the family court's non-compliance does not automatically compel the dissolution of the TRO or invalidate subsequent action by the court. *See People v. Harner,* 213 Cal.App.3d 1400, 262 Cal.Rptr. 422, 424–25 (1989). However, the fifteen-day time period is not permissive, and the family court is not free to follow the provision or not as the court chooses. *See id.* at 425. We hold that under HRS § 586–5(b), the court is obligated to hold a show-cause hearing on a TRO within fifteen days from the date the TRO is granted (where service has been effected) unless there is a substantial reason amounting to good cause for a delay. *See Shaw,* 886 A.2d at 1289–90 (concluding that the court may continue a hearing on a protection-from-abuse complaint if substantial reasons support the granting of a continu-

ance). We believe that this is a proper interpretation of HRS § 586–5(b) in light of the Legislature's intent.[7]

## V.

■ Under the facts of this case, the parties and the family court made every effort to convene the show-cause hearing within fifteen days. Surely, Styke's hospitalization and consequent absence at the April 12, 2007, hearing and the recusals of Judge Bissen and Judge Valdriz at the hearings on April 19, 2007, and April 26, 2007, respectively, justified continuing the show-cause hearing until both parties could appear before an impartial judge. *See* HRS § 586–5(b) ("All parties shall be present at the [show-cause] hearing and may be represented by counsel."); *State v. Silva*, 78 Hawai'i 115, 117, 890 P.2d 702, 704 (App.1995) ("[A]n impartial judge is required to insure a fair trial."), *overruled on other grounds by Tachibana v. State*, 79 Hawai'i 226, 235 n. 5, 900 P.2d 1293, 1302 n. 5 (1995). We conclude that there were substantial reasons amounting to good cause for continuing the show-cause hearing on the TRO beyond the fifteen-day period.

7. Of course, where statutory interpretation is involved, the Legislature remains free to amend the statute and thereby alter what this court has done. *State v. Garcia*, 96 Hawai'i 200, 206, 29 P.3d 919, 925 (2001).

8. At the time *Ling* was decided, HRS § 604–10.5 provided in relevant part:

   **Power to enjoin and temporarily restrain harassment.** ...

   ....

   (c) Any person who has been subjected to harassment may petition the district court of the district in which the petitioner resides for a temporary restraining order and an injunction from further harassment.

   ....

   (e) Upon petition to a district court under this section, the court *may temporarily restrain for a period of fifteen days*, persons named in the petition from harassing the petitioner if the alleged harassment has caused the petitioner substantial emotional distress. The court may issue an ex parte temporary restraining order either in writing or orally, provided that oral orders shall be reduced to writing by the close of the next court day following oral issuance.

   (f) *A hearing on the petition to enjoin harassment shall be held within fifteen days after it is filed.* The parties named in the petition may

## VI.

Finally, our decision in *Ling*, 91 Hawai'i 131, 980 P.2d 1005, the case relied on by the family court in its ruling, is distinguishable because it construed a prior version of a materially different harassment statute, HRS § 604–10.5 (1993 & Supp.1998).[8]

### A.

In *Ling*, the petitioner filed a "Petition for Ex Parte Temporary Restraining Order and for Injunction against Harassment" on July 6, 1998. *Id.* at 132, 980 P.2d at 1006. The district court granted the petitioner's ex parte request for a temporary restraining order (TRO)[9] against the respondent. *Id.* The TRO was effective for *fifteen days* and directed the respondent to appear at a July 13 hearing to show cause why the orders prohibiting harassment contained in the TRO should not continue to be effective. *Id.*[10] At the July 13 hearing, the district court, over the petitioner's objection, granted the request of the respondent's attorney to continue the matter for two weeks until July 27 so the attorney could investigate the case and prepare a response to the petitioner's petition; the district court also *extended* the

file responses explaining, excusing, justifying, or denying the alleged act or acts of harassment. The court shall receive such evidence as is relevant at the hearing, and may make independent inquiry.

If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of the definition exists, it may enjoin for no more than three years further harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner.... (Emphases added.)

9. We use "TRO" in referring to both a temporary restraining order issued pursuant to HRS § 604–10.5 and a temporary restraining order issued pursuant to HRS Chapter 586.

10. On July 9, the respondent filed a competing petition against the petitioner. The district court issued a fifteen-day TRO against the petitioner and ordered the petitioner to appear for a show-cause hearing set for the same date and time as the hearing arising out of petitioner's petition. *Ling*, 91 Hawai'i at 132, 980 P.2d at 1006.

petitioner's TRO against the respondent to July 27. *Id.* Subsequently, the district court dismissed the petitioner's petition because "it did not find enough basis to issue a restraining order." *Id.* (internal quotation marks omitted).

On appeal, we agreed with the petitioner that HRS § 604–10.5 required a hearing on the merits to be held within fifteen days and that the district court had erroneously continued the hearing beyond the fifteen-day period. *Id.* at 133–34, 980 P.2d at 1007–08. In construing the language "shall be held" in HRS § 604–10.5(f), we concluded that "'shall' mandates the petition hearing be held within the fifteen-day time period[,]" *Ling*, 91 Hawai'i at 133–34, 980 P.2d at 1007–08, and "'held' suggests that the parties must, at the least, convene or meet in a hearing on the merits within the allotted time." *Id.* at 134, 980 P.2d at 1008. Further, we noted that "[t]he fifteen-day hearing requirement appears to coincide with the fifteen-day TRO period" and thereby "ensures that the petitioner will have the benefit of a court order prohibiting harassment pending the hearing on the petition." *Id.* As such, we concluded that "the statutory time period was intended to benefit petitioners." *Id.*

Examining the underlying facts in *Ling*, we observed that a hearing on the merits "was not convened within the fifteen-day period although [the p]etitioner was ready to proceed" and the July 13 hearing "dealt only with continuing the hearing, and at the court's suggestion, with considering mediation of the dispute." *Id.* Nevertheless, we

affirmed the dismissal order because (1) even if the district court erred in granting the continuance, the petitioner did not challenge the district court's conclusion that "there was no evidentiary basis on which to grant an injunction" and (2) any prejudice that the petitioner might have incurred as a result of the continuance "was dissipated by the extension of the TRO to the completion of the hearing, which began on July 27, 1998." *Id.* at 135, 980 P.2d at 1009. We explained as follows:

> The effect of the extension was to maintain the court's initial order against harassment until the case was decided. Although the continuance was in technical violation of the mandate in HRS § 604–10.5(f), the protection intended to be afforded a petitioner until a resolution of the petition remained intact.

*Id.* (footnotes omitted). We also noted that while "[t]here may be exceptional circumstances under which a court may be compelled to order a continuance, ... any conceivable prejudice would ordinarily be cured by extending the initial [TRO]." *Id.* at 135 n. 4, 980 P.2d at 1009 n. 4.

### B.

Unlike the harassment statute that we construed in *Ling*,[11] HRS § 586–5 allows the family court to issue a TRO "for a period not to exceed ninety days[.]" HRS § 586–5(a). In *Ling*, the harassment statute only permitted the district court to issue a TRO for fifteen days, and the statute also provided

---

11. HRS §§ 604–10.5(e) and (f) were substantially amended in 1999. While the amendment essentially retained the fifteen-day hearing window, it allowed the district court to issue a TRO "for a period not to exceed ninety days[,]" as opposed to only fifteen days. 1999 Haw. Sess. Laws Act 143, § 1 at 460. HRS § 604–10.5(e) and (f) (Supp.2009) currently state, in relevant part:

> (e) Upon petition to a district court under this section, the court may temporarily restrain the person or persons named in the petition from harassing the petitioner upon a determination that there is probable cause to believe that a past act or acts of harassment have occurred or that a threat or threats of harassment may be imminent. . . .
>
> (f) A temporary restraining order that is granted under this section shall remain in effect at the discretion of the court for a period

not to exceed ninety days from the date the order is granted. A hearing on the petition to enjoin harassment shall be held within fifteen days after the temporary restraining order is granted. In the event that service of the temporary restraining order has not been effected before the date of the hearing on the petition to enjoin, the court may set a new date for the hearing; provided that the new date shall not exceed ninety days from the date the temporary restraining order was granted.

> The parties named in the petition may file or give oral responses explaining, excusing, justifying, or denying the alleged act or acts of harassment. The court shall receive all evidence that is relevant at the hearing, and may make independent inquiry.
>
> . . . .

(Emphasis added.)

that the hearing on the petition to enjoin harassment "shall be held" within a fifteen-day time period.[12] The structure of the harassment statute in *Ling* provided compelling evidence that the Legislature intended the fifteen-day time period for holding a hearing to be mandatory. Because the TRO itself would only last for fifteen days, if the court failed to hold a hearing on the merits within fifteen days, it would create situations where the TRO would expire by its own terms, leaving the petitioner, for whose benefit the fifteen-day period for a hearing was imposed, without protection.

Unlike in *Ling*, the ninety-day time period for which the court is authorized to issue a TRO under HRS § 586–5 does not coincide with the fifteen-day time period for a show-cause hearing. Thus, the structure of HRS § 586–5, which provides insight into the Legislature's purpose in enacting the statute, does not support the conclusion that the Legislature intended that the failure to hold a

show-cause hearing within fifteen days would automatically result in the dissolution of a TRO under the circumstances of this case. The structure of HRS § 586–5 is different from the structure of the harassment statute construed in *Ling*, and *Ling* is distinguishable.

## CONCLUSION

Based on the foregoing discussion, we vacate the family court's May 3, 2007, "Order Dissolving Temporary Restraining Order for Protection" and its June 22, 2007, "Findings of Fact and Conclusions of Law."

---

**12.** Under the harassment statute that we construed in *Ling*, the fifteen-day period for the TRO appeared to coincide with the fifteen-day period for a hearing on the petition, although the two periods were not necessarily always exactly equivalent. Under that harassment statute, the district court was authorized to issue a fifteen-day TRO *upon* a petition for relief from harassment and was directed to hold a hearing within fifteen days after the petition *was filed*. HRS § 604–10.5(e) and (f) (1993 & Supp.1998). Whenever the district court issued the TRO on the day the petition was filed, the fifteen-day period for the TRO and the fifteen-day period for the hearing were the same. However, it was possible that the fifteen-day periods for the TRO and the hearing would not exactly match if the TRO was issued on a day after the petition was filed.